IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACQUELINE CAMILLE SEDWICK, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:22-cv-02321-S-BT |
| DENIS RICHARD McDONOUGH, Secretary, Department of Veterans Affairs, et al., | § § § § | |
| Defendants. | § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This is an employment discrimination lawsuit arising out of *pro se* Plaintiff Jacqueline Sedwick's employment with the Department of Veterans Affairs (VA). Before the Court is Defendant Secretary Denis McDonough's Motion for Summary Judgment (ECF No. 91). As explained below, the District Judge should GRANT Defendant's Motion for Summary Judgment.

## Factual Background

Sedwick previously worked as an Addiction Therapist for the VA North Texas Healthcare System providing services to Veterans participating in the Mental Health Residential Rehabilitation Treatment Program at the domiciliary in Bonham, Texas. Def. App. 596, 685 (ECF No. 100). During the relevant time period, Sedwick reported to Greg Guillermo, who in turn reported to Kimberly Coleman-Prier, the Chief of the Bonham Domiciliary. *Id*. 596, 628–33, 697.

1

Sedwick started working at the Bonham Domiciliary in December 2017. *Id.* 597. On January 12, 2018, Sedwick allegedly complained to Guillermo about a framed poem hanging on a classroom wall where she conducted group sessions. *Id.* 685–86. Sedwick objected to the poem — authored by "an unknown Confederate Solider"[1] — because she is African American and a descendant of slaves. Am. Compl. 6 (ECF No. 36). Guillermo and Prier evaluated Sedwick's complaint and declined to remove the poem from the classroom. *Id.* 6–7.

Within a few weeks of her arrival at the Bonham Domiciliary, Guillermo and Prier began receiving complaints about Sedwick, including that Sedwick interrupted others when they were discussing work matters; was "closed-off" to feedback from experienced coworkers; explicitly disagreed with protocols and processes for executing her duties; and that she referred to management as "Slave driver, or Slave/Master." Def. App. 418–19. In February, Guillermo met with Sedwick and her designated representative to discuss these complaints, which

---

[1] For historical context, according to the VA, "[t]he Domiciliary Care Program is [VA's] oldest health care program. Established through legislation passed in the late 1860's, the Domiciliary's purpose was to provide a home for disabled volunteer soldiers of the Civil War. Domiciliary care was initially established to provide services to economically-disadvantaged Veterans, and it remains committed to serving that group. The Domiciliary has evolved from a 'Soldiers' Home' to become an active clinical rehabilitation and treatment program for male and female Veterans and domiciliary programs are now integrated with the Mental Health Residential Rehabilitation and Treatment Programs[.]" *See Domiciliary Care for Homeless Veterans Program*, U.S. Department of Veterans Affairs, https://www.va.gov/homeless/dchv.asp (last accessed Aug. 20, 2025).

Sedwick denied. *Id.* Thereafter, Guillermo scheduled weekly meetings with Sedwick throughout the next month to assist her in her job performance. *Id.*

On March 28, a supervisor in the Technical Rehabilitation section at the Bonham Domiciliary reported that Sedwick made comments to a patient (Veteran J) about his gender identity and upset Veteran J by suggesting that he consider hormone replacement therapy. *Id.* 121, 123. In response, Prier initiated a fact-finding investigation and met with Sedwick and her representative on April 2 about these allegations as well as other reports of performance issues, including that Sedwick had been working late without supervisor approval. *Id.* 116–19, 609. Prier explained that Veteran J reported Sedwick's comments to "his case manager, his addictions therapist, and [Prier]," but Sedwick repeatedly denied the allegations. *See id.* 116–19. When Prier asked if Sedwick had ever commented on a Veteran's appearance, Sedwick stated that she "inadvertently called a male [Veteran] by a female name [and] said he had a pretty face." *Id.* 118–19.

On April 25, Prier issued Sedwick a proposed reprimand based on her "inappropriate conduct" and "failure to follow procedure." *Id.* 109–11. The specified inappropriate conduct included Sedwick's comments to Veteran J and her April 2 admission that she had called a male Veteran by a female name and told him that he had a pretty face. *Id.* 109. The specified "failure to follow procedure" involved Sedwick's April 2 admission that she worked late on March 22 without supervisor approval. *Id.* 109–11. Although Sedwick refused to sign the

proposed reprimand and submitted a Union letter recommending the proposal be dismissed, Def. App. 110, 011–13, the reprimand was upheld on May 9, *id*. 376–77.

One month later, the Union filed a Step Three grievance on Sedwick's behalf objecting to the reprimand. *Id*. 014–19. The grievance asserted that Sedwick's alleged comments to Veteran J were "unsubstantiated rumors circulated by unverified sources," and that the "accusation has been refused by [Veteran J] himself on May 31, 2018" when he left the program. *Id*. 017–18. The grievance also disputed the allegations regarding Sedwick's April 2 admission that she had called a male Veteran by a female name, arguing that Sedwick was "simply responding [to] a vague question proposed by Mrs. Coleman-Prier, who'd asked [if Sedwick] ha[d] ever commented on a Veteran's appearance." *Id*. 018. The grievance further concluded that Sedwick "has presented a prima facie case of retaliation with respect to the proposed reprimand, and subsequent reprimand" and that "[t]he Agency's alleged legitimate reasons as documented in the proposed reprimand are pretextual." *Id*. The Step Three grievance was ultimately denied later in June 2018, due to there being "sufficient evidence to support the reprimand." *Id*. 020.

Two days before the Step Three grievance was filed, Sedwick received a proposed seven-day suspension due to her behavior the previous month. *Id*. 177–78. The proposed suspension references two specific interactions: (1) on May 1, Sedwick went to another Addiction Therapist's office and "questioned why he had told Veteran K that he was Veteran K's assigned therapist" and further "brought Veteran K to [the therapist's] office and in his presence continued arguing with

4

[the therapist] about the assignment," and (2) on May 16, "Veteran E had escorted Veteran B to [Sedwick's] office because . . . it was [Veteran B's] first appointment," and Sedwick "demonstrated confrontational and abrasive behavior towards Veteran E" that made "[b]oth Veterans [] feel[] uncomfortable." *Id.* 177. On May 22, Guillermo met with Sedwick to discuss the concerns raised by Veterans E and B, but Sedwick denied the allegations regarding her behavior. *Id.* 198. Sedwick further responded to the proposed seven-day suspension in a letter disputing the Veterans' and Addiction Therapist's statements and asserting that the proposed suspension "is continued harassment, hostile work environment, intimidation and retaliation" from Guillermo and Prier for her reaching out to an EEO counselor for informal counseling on April 9, 2018. *Id.* 219–22. When Prier issued the formal seven-day suspension on July 6, Sedwick wrote on the suspension notice that "[t]he charges and claims made are untrue." *Id.* 239.

The Union filed a Step Three grievance on Sedwick's behalf on July 17 that references the Master Agreement's[2] requirement that "all employees [] be treated fairly and equitably and without discrimination . . ." and asserts that Sedwick "has not been treated fairly and equitably" with respect to the suspension. *Id.* 021–22. The grievance also argued that Sedwick's suspension is improper because the

---

[2] During her employment at the VA North Texas Health Care System, Sedwick "was provided representation per [5 U.S.C.§ 7114(a)(1)] and covered by the 2011 Master Agreement between the Department of Veterans Affairs and, [American Federation of Government Employees (AFGL)], AFL-CIO." Def. App. 004; *see id.* 017, 021.

proposing official and deciding official were the same person. *Id.* 021. The Agency offered to reduce the suspension to three days in abeyance if Sedwick accepted the terms of an abeyance agreement, but Sedwick declined. *See id.* 007, 025–27. The Agency consequently denied the Step Three grievance and upheld the seven-day suspension on September 26. *Id.* 007, 027.

On July 23, 2018—one week after the Union filed its Step Three grievance regarding Sedwick's suspension—Sedwick filed an EEO Complaint alleging retaliation and race discrimination for numerous instances where she was "counseled" by Guillermo and Prier, including: Guillermo's February 2018 meeting about her interrupting coworkers and requiring weekly meetings with her in March; Prier "counseling" her for working late on March 22 and "accus[ing]" her of telling Veteran J he should get hormone replacement therapy; the reprimand for inappropriate behavior and working past hours that was upheld; and the proposed seven-day suspension for allegations of inappropriate and disruptive behavior that "made [] 2 Veterans feel uncomfortable." *Id.* 782–85.

Sedwick amended her July 2018 EEO complaint almost a year later on March 14, 2019 to include additional facts from January 12, 2018 through February 11, 2019. *Id.* 793–98. Sedwick's allegations include that she was subject to a hostile work environment based on her race and was retaliated against after she "expressed concern about a 'racially oppressive picture'" and Guillermo and Prier "failed to take corrective action." *Id.* 794. Sedwick's allegations also assert that she

6

was subject to harassment and a hostile work environment based on reprisal from the EEO complaint. *Id.*

Meanwhile, Sedwick continued to have difficulties at work throughout 2018 and early 2019. She was reported for repeatedly approaching a Veteran about signing a petition regarding the "racist work environment" at the Bonham Domiciliary, *id.* 250, and allegedly telling a Veteran that he is "the third white ma[l]e . . . that has caused disruptions in [her] class" and that she knows about the Veteran's CPS case and has "testified against people because of these behaviors." *Id.* 520.

On January 7, 2019, Prier reassigned Sedwick to a Program Support Assistant position in Dallas—with the same pay grade and step as her position in Bonham as an Addiction Therapist—pending an investigation into the additional complaints. *Id.* 292. Despite Sedwick's reassignment, *id.*, Guillermo was still responsible for the administrative investigation into the allegations against her and scheduled a meeting with her for a formal fact finding about "time/leave abuse, accurate completion of work assignments, interactions with staff & Veterans, and concerns of misrepresentation." *Id.* 261. Guillermo and Sedwick met on January 18, and Sedwick either denied the allegations or refused to answer because she wanted her representative present, even though Guillermo explained the administrative investigation was not part of the EEO process. *Id.* 255–59, 263.

On March 22, 2019, Prier issued a proposed ten-day suspension for various events occurring from October 2018 to January 2019, including Sedwick's failure

to timely document patient records in October 2018; absence without official leave and failure to follow proper leave procedures in December 2018; failure to participate in the January 18, 2019 administrative investigation; lack of candor; and inappropriate conduct with Veterans at both the Bonham and Dallas locations. *Id.* 240–45; 408. However, the proposed suspension was rescinded in May 2019 because Sedwick transferred to an Indiana VA facility. *Id.* 50, 408, 531, 597.

On April 26, 2019, Sedwick filed another EEO Complaint, alleging harassment and hostile work environment because the proposed ten-day suspension "was sent to the wrong address and left outside of that door at 10:24 AM on 3/22/2019, a time when [Prier] knew [Sedwick] would be at work" when the packet "contained confidential information concerning past retaliatory disciplinary actions." *Id.* 802. Sedwick also asserted that "[s]ince [she] first complained about a large, confederate poem on the wall in the [Bonham] facility in January 2018 and filed my first EEO case against [Prier] and the other associated [supervisors] in April 2018,[3] [Prier] has demonstrated time and time again that she and the other Bonham [supervisors] are retaliating against me." *Id.* 806. On August 14, 2019, Sedwick amended this EEO complaint to include events from March 22, 2019 to July 15, 2019. *Id.* 807–09.

---

[3] Sedwick met with an EEO counselor for informal counseling on April 9, 2018. Am. Compl. ¶ 14; Def. App. 778–79, 816. She did not file her EEO complaint until July 23, 2018. Def. App. 782–85.

On September 13, 2021, the EEOC issued a consolidated decision as to Sedwick's July 2018 and April 2019 EEO complaints. *Id.* 811–22. The Administrative Judge found that Sedwick failed to establish a hostile work environment claim because there was no evidence that the incidents at issue were "based on" Sedwick's race or EEO activity, nor was there evidence that the Agency's actions rose to the level of prohibited harassment. *Id.* 816–17. The Administrative Judge concluded that "[t]he entire complaint is built upon [Sedwick's] feelings and personal perceptions of incidents at work, which are merely the ordinary trials and tribulations of having a job." *Id.* 818. Sedwick's disparate treatment claim also failed because "the Agency articulated legitimate, non-discriminatory reasons in support of its actions in this case." *Id.* 819. The agency then issued a final decision on September 20, 2021. *Id.* 823–24. Sedwick's administrative appeal and motion for reconsideration were both denied. *Id.* 831–36, 838–40.

Sedwick then filed this lawsuit on October 17, 2022. *See generally* Compl. (ECF No. 3). She alleges that she experienced racial discrimination, a hostile work environment, retaliation, and a constructive discharge. *See generally* Am. Compl. (ECF No. 36). The Secretary of the Department of Veterans Affairs Denis McDonough—the only remaining defendant in this case—filed a Motion for Summary Judgment, arguing that dismissal of all of Sedwick's claims is warranted because she failed to exhaust her administrative remedies by "abandon[ing] her first-filed administrative remedy (Union grievances)" and thus is prohibited from "bring[ing] her subsequently-filed EEO claims to this Court." Mot. Br. 2. (ECF No.

92) In the alternative, Defendant argues that Sedwick's claims have no merit. *Id.* 3. In response, Sedwick asserts that all of the complaints about her at work were retaliatory acts as a result of her complaining about the poem and filing her EEOC complaint. *See* Resp. 40 (ECF No. 105) ("This activity triggered the chain of retaliatory actions that ensued.").

Sedwick also moved to strike portions of Defendant's summary judgment brief and appendix that she contends "improperly introduce [her] private medical records in an attempt to malign her character." *See* Mot. Strike 1 (ECF No. 104). The Court granted the motion by separate order (ECF No. 112). Accordingly, it will disregard Section II.D of Defendant's brief and the portions of Defendant's appendix cited in Section II.D.

## Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The

parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)).

All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins.*, 784 F.2d 577, 578 (5th Cir. 1986)). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion. *Id.* at 250.

## Analysis

I. <u>Sedwick is barred from pursuing claims regarding the April 2018 reprimand and the July 2018 seven-day suspension.</u>

Defendant argues that Sedwick's claims must be dismissed because she first pursued them under her union's negotiated grievance procedure, precluding her from bringing the same claims through an EEO complaint and lawsuit. *Id.* 24.

"Under the Civil Service Reform Act (CSRA), a federal employee who believes [s]he has been discriminated against and whose agency's negotiated agreement permits the acceptance of grievances alleging discrimination may file <u>either</u> a grievance or an EEO complaint, but not both." *Smith v. Jackson*, 539 F.

Supp. 2d 116, 130 (D.D.C. 2008) (citing 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a)).

"An employee who files a timely written grievance irrevocably chooses the negotiated grievance procedure route, and is precluded from filing an EEO complaint on the 'same matter.'" *Id.* (citing *Johnson v. Peterson*, 996 F.2d 397, 399 (D.C. Cir. 1993), and *Am. Fed. of Gov't Emps., Local 2052 v. Reno*, 992 F.2d 331, 333–34 (D.C. Cir. 1993)). An aggrieved federal employee must "fully exhaust the remedy chosen." *Taylor v. Dam*, 244 F. Supp. 2d 747, 757 (S.D. Tex. 2003) (citing *Vinieratos v. U.S. Dep't of Air Force Through Aldridge*, 939 F.2d 762, 772 (9th Cir. 1991)). Regardless of whether the employee chooses either the grievance or statutory procedure, it is only "after administrative exhaustion [that] the employee is entitled to seek judicial review of his or her discrimination claims." *Id.* (citing *Linthecome v. Dep't of Treasury*, 2001 WL 1446176, at *3 n.1 (N.D. Tex. Nov. 13, 2001), *aff'd*, 45 F. App'x 323 (5th Cir. 2002)).

Sedwick argues that her claims are not barred and that she exhausted her administrative remedies because (1) she "never filed a first or second step grievance," (2) "the third step grievance was filed solely by the union without her initiation," and (3) "the union grievance did not contain any allegations of discrimination." Resp. 33 (ECF No. 105). But none of Sedwick's arguments have merit.

First, the cover letter to the Step Three grievance regarding the reprimand specifically states that "[t]he Union is filing this *initial* grievance at a Step 3 pursuant to Article 42 (7) (Note 5) of the Master Agreement," Def. App. 014

(emphasis added), which explains the absence of a first or second step grievance and notes the propriety of first filing a Step Three grievance. Sedwick does not assert any reason why the Union could not have used the same appropriate procedure for the grievance regarding the seven-day suspension. Moreover, courts have found that an election of remedies is made when the employee *or* a union representative on the employee's behalf initiates the grievance process. *See Rene v. Granholm*, 2022 WL 17820342, at *2 (D.D.C. Dec. 20, 2022) (noting that after plaintiff was issued a notice of proposed removal, his union filed a step one grievance on his behalf pursuant to the union's collective bargaining agreement); *Redmon v. Mineta*, 243 F. App'x 920, 922, 2007 WL 1837134, at *1 (6th Cir. 2007) (explaining that "pursuant to the second step of the CBA union negotiated employee grievance procedure, the union filed a formal grievance on behalf of [plaintiff] challenging her suspension and reassignment").

Second, the record is clear that Sedwick was aware that the Union filed the Step Three grievance regarding the reprimand, as she herself signed the grievance. Def. App. 019. And Sedwick's July 2018 EEO complaint—which raised issues regarding both the reprimand and the seven-day suspension—checked the box indicating that she had filed a union grievance on the same issues raised in her complaint. *Id.* 782.

Third, whether the grievance contains an explicit allegation of discrimination does not determine whether it addresses the same "matter" as an EEO claim and lawsuit. *See Seeley v. Huerta*, 2018 WL 1611199, at *3 (N.D. Tex.

13

Apr. 2, 2018). Instead, the question is "whether plaintiff was challenging the same underlying employment action" in the grievance and EEO processes. *Id.* (citing *Taylor v. Dam*, 244 F. Supp. 2d 747, 756 (S.D. Tex. 2003)). "Two complaints refer to the same matter if the disputed personnel action at root is the same irrespective of whether the grievance raised discrimination." *Id.* (citation omitted); *see also Redmon v. Mineta*, 243 F. App'x at 924–25 (agreeing with the Tenth Circuit's articulation that under 5 U.S.C. § 7121(d), the term "'matter' refers to the underlying government action which precipitated the complaint, not the legal theory employed to challenge the government action") (quoting *Giove v. U.S. Dept of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006) (unpublished)) (cleaned up); *Rene*, 2022 WL 17820342, at *5 (citing *Smith v. Jackson*, 539 F. Supp. 116, 130 (D.D.C. Mar. 10, 2008)) (noting that "[i]n determining whether an employee raised the 'same matter' for purposes of the CSRA in a negotiated grievance procedure, . . . judges in this district have looked to whether the claims at issue concerned the same 'topic' or were 'rooted in the same factual nucleus'" and thus compared plaintiff's grievance with his lawsuit complaint to determine if he attempted to relitigate the same matter).

Here, the Court finds that Sedwick's grievances involve the same underlying employment actions as her July 2018 EEO complaint. Her July 2018 EEO complaint explicitly involves the issuance of Sedwick's reprimand and seven-day suspension, as well as all the events the Agency identified to justify the actions taken. *See* Def. App. 782–85, 793–98. And even though Sedwick's July 2018 EEO

14

Complaint contains more factual detail than her grievances, particularly after her amendments, it is still evident that her grievances and July 2018 EEO complaint involve the same disputed personnel actions at their roots—her reprimand and seven-day suspension and the misconduct the Agency cited in meting out that discipline. *See Coleman v. Roth*, 2021 WL 724610, at *9 (W.D. Tex. Feb. 23, 2021) (comparing plaintiff's grievance and EEO charge side-by-side and finding that plaintiff complains of the same actions, even though "some of the details regarding [her] present retaliatory hostile work environment claim that are referenced in her EEO charge aren't specifically mentioned in her grievance, [because] those details are all—according to [plaintiff]—evidence of the same overall conspiracy[, which] is the same conspiracy that [plaintiff] grieved"), *adopted by*, 2021 WL 4079123 (W.D. Tex. July 29, 2021); *Rene*, 2022 WL 17820342, at *5–6 (dismissing plaintiff's argument that, because he did not explicitly challenge his notice of proposed removal and performance removal plan, he did not raise the same issues in the grievance procedure and his lawsuit when he raised "identical conduct" in both documents). *Cf. Seeley v. Huerta*, 2018 WL 1611199, at *3 (holding that the same matter was *not* at issue when "the subject of the grievance was the delay in ruling on plaintiff's leave requests" and plaintiff only sought "a revision to the system of reviewing and ruling on leave requests" rather than individual benefits or damages, but "the subject of the EEO claim was discrimination against plaintiff because of his sex").

The timeline of Sedwick's grievances in connection with her July 2018 EEO complaint also indicate that they are about the same matter. Sedwick filed her July 2018 EEO complaint less than two months after her first Step Three grievance in June 2018 and only one week after her second Step Three grievance regarding the suspension. *See* Def. App. 017–19, 021–22, 782; *Linthecome v. O'Neill*, 2002 WL 1860532, at *2 (5th Cir. 2002) (per curiam) (finding plaintiff's contention—that he cannot be held to an election of the grievance procedure "because he had not mentioned age, sex, or race in his formal CBA grievance"—"belied by [his] informal EEO complaint, filed a mere one week later [than his grievance], in which he expressly alleged sex, race, and age discrimination for the self-same non-promotion").

Moreover, Sedwick's July 2018 EEO Complaint checked the box indicating that she had filed a union grievance on the claims addressed in her EEO complaint. Def. App. 782; *see Heimrich v. Dep't of the Army*, 947 F.3d 574, 580–81 (9th Cir. 2020) (noting that the plaintiff's "own EEO complaint supports [the court's] conclusion [that the plaintiff's EEO complaint is barred because he chose to use the union grievance procedure for the same issues] because "[h]e checked the box on the EEO form indicating that he had previously raised the same issues . . . under a union-negotiated grievance procedure").

Thus, Sedwick is barred from pursuing her claims regarding the reprimand and seven-day suspension in this lawsuit. However, Sedwick's April 2019 EEO complaint contains harassment and hostile work environment allegations

regarding her proposed ten-day suspension and other events that she did not file any grievances about. Therefore, she is not barred from pursuing claims as to those matters, and the Court consequently evaluates them under the summary judgment standard.

II.    Sedwick fails to establish a prima facie case for race discrimination under Title VII.

Title VII prohibits employers from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Unlawful discrimination under Title VII can be established through either direct or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003); *Wallace v. Methodist Hosp. Sys.* 271 F.3d 212, 219 (5th Cir. 2001). "Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272 (5th Cir. 2006). The *McDonnell Douglas* burden shifting framework applies in the absence of direct evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-801 (1973).

Under that framework, a plaintiff may establish a prima facie case of discrimination by demonstrating that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Ernst v. Methodist Hosp. Sys.*, 1

F.4th 333, 339 (5th Cir. 2021) (quoting *Stroy v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)). Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting *EEOC v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009)). If the employer identifies a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to "produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap, Inc.*, 335 F.3d 572, 578 (5th Cir. 2003)). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).

Here, Defendant does not dispute that Sedwick is a member of a protected group or that she was qualified for the Addiction Therapist position at the Bonham Domiciliary. Therefore, the first two elements of Sedwick's prima facie case are satisfied.

As to the third element, Sedwick presents four different alleged adverse actions: (1) the reprimand, (2) the seven-day suspension, (3) the proposed ten-day suspension; and (4) her reassignments. *See* Resp. 41. But because Sedwick grieved both her reprimand and the seven-day suspension, she is barred from pursuing claims regarding those adverse actions. Further, the proposed ten-day suspension cannot constitute an adverse action because it was only a *proposal* that was rescinded and never enacted. *See Tejada v. Travis Assoc. for Blind*, 2014 WL 2881450, at *5 (W.D. Tex. June 25, 2014) (citing *Aryain v. Wal-Mart Stores Tex., L.P.*, 534 F.3d 473, 485−86 (5th Cir. 2008)) ("Insults, and threats of suspension or termination in response to misconduct are events the Fifth Circuit has found do not amount to a materially adverse employment action that can support a Title VII claim."), *adopted sub nom. Tejada v. Travis Ass'n for the Blind*, 2014 WL 4165370 (W.D. Tex. Aug. 7, 2014), *aff'd*, 617 F. App'x 325 (5th Cir. 2015); *Jumbo v. Goodwill Indus. Houston*, 2023 WL 5417149, at *8 (S.D. Tex. Aug. 7, 2023) ("It has long been the Rule in the Fifth Circuit that disciplinary warnings do not constitute adverse employment actions for purposes of Title VII."), *adopted by*, 2023 WL 5401874 (S.D. Tex. Aug. 22, 2023); *Gaspari v. FMC Techs., Inc.*, 2016 WL 1055642, at *8 (S.D. Tex. Feb. 4, 2016) ("Threats of termination are not adverse employment actions.") (citing *Breaux v. City of Garland*, 205 F.3d 150, 159 (5th Cir. 2000)), *adopted by*, 2016 WL 1070859 (S.D. Tex. Mar. 15, 2016); *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 590 (S.D. Tex. Jan. 20, 2015) (holding that a decision

to terminate an employee was not an adverse employment action because it was rescinded with no loss of pay).

And Sedwick has not shown that a genuine fact issue exists as to whether her transfer to the Program Support Assistant position in Dallas constitutes an actionable adverse action. To adequately demonstrate an adverse employment action, Sedwick need not show discrimination with respect to an "ultimate employment decision" but instead "need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment.'" *Hamilton v. Dallas Cnty*, 79 F. 4th 494, 506 (5th Cir. 2023). With respect to a transfer, courts in the Fifth Circuit are no longer confined to considering only whether a transfer makes the job objectively worse. *See Hamilton*, 79 F.4th at 500 n.24, 501; *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). Rather, the new standard is whether the employee has shown "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354–55.

Here, Sedwick's transfer to Dallas involved a different position but she was compensated at the "same pay, grade, and Step," and she had a shorter commute to her home in Dallas. Mot. Br. 17 n.30; *see id.* 5 n.10. Sedwick does not submit any evidence that the Dallas transfer caused her any harm respecting any condition of employment; she merely refers to it as an "unjustified" and "forced" reassignment. Resp. 24–25. She also does not present any evidence disputing Defendant's assertion that her transfer to Indiana was a "voluntary, lateral transfer," Mot. Br. 5

n.9, other than a brief statement in her amended complaint that "[a]s a result of another excruciatingly traumatizing proposed suspension, [she] was forced to take employment at the Indianapolis VA Center." Am. Compl. 20. She does not reference her transfer to Indiana at all in her Response brief. Thus, Sedwick fails to state a prima facie case for race discrimination because she has not produced evidence to raise a fact issue as to whether her transfer to Dallas or Indiana was an adverse employment action. *See Jenkins v. City of San Antonio Fire Dep't*, 12 F. Supp. 3d 925, 939–45 (W.D. Tex. 2014) (holding that plaintiff did not satisfy the third element of his prima facie case for race and age discrimination because he did not produce sufficient evidence to establish that his reassignment was less prestigious or involved less responsibilities such that it constituted an adverse employment action); *Reyna v. Epiroc Drilling Sols, LLC*, 2025 WL 317568, at *11 (N.D. Tex. Jan. 28, 2025) (concluding that plaintiff's prima facie case failed when he "merely provided a conclusory statement in a declaration that he found [the occasional reassignment from desk work to cleaning duty] demeaning and humiliating" and "[e]ven if moving to cleaning duty were actionable, there is no indication that he was reassigned on the basis of his race or national origin"), *reconsideration denied*, 2025 WL 361406 (N.D. Tex. Jan. 31, 2025). *Cf. Muldrow*, 601 U.S. at 359 (concluding that plaintiff's allegations, "if properly preserved and supported," meet the test requiring that she "show only some injury respecting her employment terms or conditions" when she alleged details about the type of job

she was transferred to, the type of work involved, and the impact it had on her schedule).

Sedwick also fails to establish the fourth element of her prima facie case because she has not shown that she was treated less favorably than anyone similarly situated outside of her protected group. She alleges that James Hurt, a Rehabilitation Tech, and Alicia Wright, a supervisor, engaged in inappropriate behavior but did not receive any disciplinary actions. *See* Resp. 26. But they are not similarly situated to Sedwick, who was an Addiction Therapist. *See Washington v. Nat'l Oilwell Varco, L.P.*, 634 F. Supp. 3d 316, 233 (N.D. Tex. Oct. 7, 2022) (finding that plaintiff failed to identify any employees similarly situated to her because the ones she identified "held different positions, worked in different departments, and—notably—reported to different supervisors").

Therefore, Sedwick has failed to establish her prima facie case for race discrimination under Title VII and the District Judge should thus GRANT Defendant's Motion for Summary Judgment as to her race discrimination claims.

III.    Sedwick fails to establish her prima facie case for retaliation.

Defendant is also entitled to summary judgment on Sedwick's retaliation claim because she similarly fails to establish a prima facie case for retaliation. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) the employee engaged in an activity protected by Title VII; (2) the employer took adverse action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Smith v.*

*Kendall*, 2024 WL 4442040, at *6 (5th Cir. Oct. 8, 2024). "Compared to the discrimination context, an 'adverse employment action' for retaliation claims under Title VII appears to have a higher bar" because the plaintiff must show that a reasonable employee would have found the challenged action materially adverse such that it "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Liao v. Univ. of Texas at San Antonio*, 2024 WL 4564278, at *9 (W.D. Tex. Oct. 23, 2024) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Gupta v. Gov't Servs.*, 2023 WL 2025056, at *12 (N.D. Tex. Feb. 14, 2023) (citing *Hudson v. Lincare, Inc.*, 2023 WL 240929, at *5 (5th Cir. 2023)). Title VII does not immunize employees from slight annoyances at work. *Askar v. Envoy Air, Inc.*, 2025 WL 624489, at *2 (N.D. Tex. Feb. 26, 2025) (citing *Burlington Northern*, 548 U.S. at 68).

Assuming, without deciding, that Sedwick has shown she engaged in a protected activity, she again fails to show that Defendant took an adverse action against her. As discussed above, the reprimand and seven-day suspension are barred from consideration by her initiation of the grievance procedure, and the proposed ten-day suspension does not constitute an adverse action because it was never implemented. Further, Sedwick does not present any evidence that her transfers constitute the type of employment action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Sedwick's allegations regarding her write-ups or negative interactions with Prier and Guillermo also do not constitute adverse employment actions. *See Gupta*, 2023 WL 2025056, at *13 ("A chilly relationship with a supervisor would not dissuade a reasonable worker from making a discrimination complaint, and indeed it did not dissuade [plaintiff] from [doing so here].); *Brown v. Valvoline, LLC*, 2024 WL 2946099, at *6 (S.D. Tex. June 11, 2024) (finding that plaintiff's "general allegation of a 'hostile meeting' as an adverse employment action is not actionable" because "'allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment' are not adverse employment actions") (citing *King v. Louisiana*, 294 F. App'x 77 (5th Cir. 2008)); *Ferrara-Faltinek v. West Texas A&M Univ.*, 2025 WL 1678155, at *7 (N.D. Tex. June 13, 2025) (stating that "the Fifth Circuit has held on several occasions that 'criticism, such as [a supervisor's] oral threats or abusive remarks, does not rise to the level of an adverse employment action'") (collecting cases).

Thus, the District Judge should GRANT Defendant's Motion for Summary Judgment as to Sedwick's retaliation claim.[4]

---

[4] Even if the District Judge finds that Sedwick's proposed suspension or transfers constitute an adverse employment action, she does not demonstrate the third element of her prima facie case for retaliation because she does not show that a causal connection exists between the protected activity and the adverse employment action. A causal connection can "be established simply by showing close enough timing between two events." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019). The Fifth Circuit has held that a period of approximately two months between the protected activity and the adverse employment action is sufficient temporal proximity "to show causal connection for purposes of a *prima facie* case." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219

IV.    Sedwick fails to establish her prima facie case for her hostile work environment claim.

Sedwick also claims that she was subject to a hostile work environment due to her race. Am. Compl. 5.

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To establish this cause of action, a plaintiff must show: (1) they belong to a protected class; (2) they were subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Gaudette v. Angel Heart Hospice, L.L.C.*, 2025 WL 1419720, at *2 (5th Cir. May 16, 2025) (internal citation and quotation marks omitted). "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997). It is not a "general civility code" and thus "teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422,

---

(5th Cir. 2016). But here, Sedwick complained about the poem over a year before her proposed ten-day suspension and her transfers to Dallas and Indiana. And she filed her July 2018 EEO complaint nine months before these actions. She presents no other evidence to establish a causal connection.

433 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 745 (2023), *reh'g denied sub nom.* 143 S. Ct. 1049 (2023) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, the only element of her prima facie case that Sedwick has demonstrated is that she belongs to a protected class. Even if the Court assumes, for the sake of argument, that Sedwick has demonstrated she was subject to unwelcome harassment, she has not identified any evidence that the alleged harassment occurred based on her race. "[T]hreats of termination and other disciplinary actions cannot establish a hostile work environment if they are not based on the employee's race." *Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.*, 2024 WL 1055120, at *8 (W.D. Tex. Mar. 11, 2024) (citing *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 917 (5th Cir. 2006)). Thus, the District Judge should GRANT Defendant's Motion for Summary Judgment as to Sedwick's hostile work environment claims. *See Byrnes v. City of Hattiesburg*, 2016 WL 1090613, at *2 (S.D. Miss. Mar. 18, 2016) (granting summary judgment on hostile work environment claim when plaintiff did not bring forth "any evidence, other than his own subjective belief, that [defendant] targeted him because of his race or disability), *aff'd*, 662 F. App'x 288 (5th Cir. 2016); *Brooks v. Bexar Cnty. Hosp.*, 2023 WL 6518850, at *3–4 (W.D. Tex. Oct. 5, 2023) (holding that plaintiff's allegations such as reportedly "being singled out for not completing a task" and being spoken to "harshly by her supervisor" could not support a cause of action for harassment based upon race as a matter of law);

*Brackens v. Dallas Indep. Sch. Dist.*, 2010 WL 5464823, at *15 (N.D. Tex. Sept. 20, 2010) (because plaintiff "failed to provide any evidence showing that [defendants'] conduct was based on her race, her harassment/hostile work environment claim should be dismissed"), *adopted by*, 2010 WL 5485886 (N.D. Tex. Dec. 30, 2010).

V.    <u>Sedwick fails to demonstrate that she was constructively discharged.</u>

"A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). A constructive discharge claim has two elements. First, a plaintiff must allege her employer discriminated against her to the point that her "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997); *Green v. Brennan*, 578 U.S. 547, 555 (2016).[5] Importantly, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile

---

[5] When determining if conditions were sufficiently intolerable, a court considers whether the plaintiff has alleged: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (internal alteration and citation omitted).

environment claim." *Brown*, 237 F.3d at 566. Second, to state a constructive discharge claim, a plaintiff must have "actually resigned." *Green*, 578 U.S. at 555.

Here, Sedwick fails to establish both elements of her constructive discharge claim. She does not demonstrate that Defendant's conduct rises to the level of a constructive discharge, and she never "actually resigned" from the VA and instead transferred to Indiana.

### Recommendation

For the reasons stated, the District Judge should GRANT Defendant's Motion for Summary Judgment (ECF No. 91) and dismiss Sedwick's claims with prejudice.

**SO RECOMMENDED.**

August 22, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).